# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ERDAL ASLAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-13-1319-M |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Erdal Aslan brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Chief United States District Judge Vicki Miles-LaGrange has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 15, hereinafter "R._"). The parties have briefed their positions, and the case is now ready for decision. For the reasons discussed below, it is recommended that the Commissioner's decision be AFFIRMED.[1]

---

[1] Plaintiff attached to his Amended Complaint twenty pages of documents, including correspondence from the Appeals Council and medical records. *See* Doc. No. 7-1. When

PROCEDURAL HISTORY AND ADMINISTRATIVE DECISION

Plaintiff protectively filed his applications for DIB and SSI on October 29, 2010. R. 15, 152-63, 222. Plaintiff alleged a disability onset date of June 26, 2007, and sought benefits on the basis of back injury; arthritis; broken ribs; muscle loss; migraines; dizziness and fatigue; bone screws and plate; shortness of breath; and right leg and knee inflammation, numbness, and pain. R. 15, 157, 221, 226. Following denial of his applications both initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 18, 2012. R. 32-75, 102-32. Plaintiff appeared and testified at the hearing and waived his right to an attorney or professional claims representative, although Plaintiff did appoint his wife to act as his representative in connection with his SSA claims. R. 11, 38-41, 150, 151.[2] Plaintiff's wife also testified at the hearing. R. 70-74. The ALJ issued an unfavorable decision on July 18, 2012. R. 15-26.

The Commissioner uses a five-step sequential evaluation process to determine entitlement to disability benefits. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009);

---

deciding an appeal as to the merits of a disability determination, the Court is not at liberty to evaluate evidence that was not before the SSA but must rely "upon the pleadings and transcript of the record." *See* 42 U.S.C. § 405(g) (Sentence Four). The documents attached to Plaintiff's pleading, however, are merely duplicates of documents that already are included in the certified administrative record filed with the Court. *See* Doc. No. 7-1; R. 1-6, 7-9, 97-100, 101.

[2] Both prior to and at the outset of the hearing, Plaintiff was specifically informed by the SSA of his right to have an attorney or other representative act on his behalf in connection with his DIB and SSI applications. *See* R. 34-40, 110, 115, 120, 123, 126, 127-32, 134, 139-40, 151.

20 C.F.R. §§ 404.1520, 416.920. Prior to undertaking this sequential analysis, the ALJ summarized the medical evidence in the record. R. 17-19. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged disability onset date through the date of the decision. R. 19-20; *see* 20 C.F.R. §§ 404.1571, 416.971. At step two, the ALJ determined that Plaintiff had the severe impairments of: status-post June 2007 motor vehicle accident with multiple traumas, including pelvic fracture with subsequent hip reconstruction surgery; lumbar fracture at L4 spinous process; right knee small tear of the posterior horn of the medial meniscus amenable to an arthroscopic surgery, for which informed consent was given but unclear whether the surgery was completed; fractures of the first orbit and left occipital bones with impact intercranial and orbital contents requiring surgical correction but not resulting in traumatic brain syndrome or other neurological deficits; right scapula fracture not requiring surgical correction; fractures of right first and third through twel[fth] ribs not requiring surgical correction; and depressive disorder [not otherwise specified]. R. 20; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). At step three, the ALJ determined that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 20-21; *see* 20 C.F.R. §§ 404.1520(d), 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 21-25; *see* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The ALJ found:

> [T]he claimant has the [RFC] to perform [a] limited range of skilled, light work and [a] very wide range of semi-skilled, sedentary work as defined in 20 CFR 404.1567(b) and (c)[,] 416.967(b) and (c). Specifically, he can lift, carry, push, and pull 10 pounds frequently and 20 pounds occasionally; sit about 6 hours in an 8 hour work day; stand and/or walk about 2 hours in an 8 hour work day; frequently grasp, feel, twist, and turn, and work overhead with his upper extremities; frequently operate foot pedals; and occasionally climb stair[s] and ramps, stoop[], and bend. He can never climb ropes, ladders, and scaffolds and never crouch, kneel, and crawl. He can understand, remember, and carry out simple and some complex job instructions and tasks; adequately make adaptations to working environments and adequately deal with changes in work processes and environment; and have frequent contact and interactions with the co-workers and supervisors and have occasional contact and interactions with the general[]public.

R. 21; *see* 20 C.F.R. §§ 404.1567, .1568, .1569a; *id.* §§ 416.967, .968, .969a. The ALJ determined at step four that Plaintiff was unable to perform any of his past relevant work, which the ALJ found to constitute "semi-skilled to skilled, light to heavy work," due to Plaintiff's limitations in standing and/or walking. R. 25; *see* 20 C.F.R. §§ 404.1565, 404.1572, 416.965, 416.972.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. R. 25-26. Finding that Plaintiff's additional limitations "have little or no effect on the occupational base of unskilled sedentary work," given Plaintiff's ability to "perform a very wide range of semi-skilled sedentary work," the ALJ determined that the step-five analysis could be made using the framework provided by the Medical-Vocational Guidelines (the "Grids"), 20 C.F.R. pt. 404, subpt. P app. 2. R. 25-26. The ALJ concluded that Plaintiff had not been disabled within the

meaning of the Social Security Act from his alleged onset date of June 26, 2007, through the date of the decision. R. 26.

The SSA Appeals Council considered additional evidence but denied review. R. 1-10. Thus, the July 18, 2012, determination of the ALJ is the Commissioner's final decision on Plaintiff's DIB and SSI applications. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff timely commenced this appeal.

STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the administrative law judge's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its

own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

A claimant such as Plaintiff has the overall burden of establishing his claim and proving a disability, even when appearing pro se. *See Salas v. Califano*, 612 F.2d 480, 483 (10th Cir. 1979); *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984). Because Plaintiff is appearing pro se on this appeal, the undersigned liberally construes his filings. *See Wilson v. Astrue*, 249 F. App'x 1, 5 (10th Cir. 2007). To obtain judicial review, however, it is insufficient to merely "suggest dissatisfaction" or mention an issue in the context of another matter. *Id.*; *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994).

ANALYSIS

Liberally construed, Plaintiff raises three arguments to support his request for reversal of the ALJ's decision. First, Plaintiff asserts that the ALJ's RFC determination relied solely upon an incomplete consultative examination and failed to consider all the medical evidence in the record. *See* Pl.'s Reply Br. (Doc. No. 21) at 6-9.[3] Next, Plaintiff argues that the ALJ's step-three determination is not supported by substantial evidence or rendered under proper legal standards. *See id.* at 9-10. Finally, Plaintiff argues that the ALJ erred in failing to obtain testimony from a vocational expert. *See id.* at 10-11.

---

[3] Although Plaintiff did not raise these substantive arguments until his reply brief, the undersigned has considered them.

A. *The RFC Determination*

    1. <u>Consulting Physician Report</u>

On December 20, 2010, consulting physician Robin Hall, MD, examined Plaintiff in connection with his SSA applications. R. 465-71. Dr. Hall issued a detailed report, in which she opined that Plaintiff appeared alert and oriented, with no acute distress, and with normal thought processes. R. 466. Dr. Hall found that Plaintiff's grip strength was 5/5 bilaterally and his lower extremity strength was 5/5 bilaterally, although with a focal sensory deficit in the L4 region on the right side. R. 466. The report stated that Plaintiff had normal hand skills and posture and that his finger-to-thumb opposition was adequate. The report additionally stated that Plaintiff "ambulates with a limp secondary to pain however his gait is stable and safe at a slow speed without the use of any assistive devices." R. 466. Dr. Hall found that Plaintiff had some range-of-motion limitations with his back and hip on the right side but concluded that Plaintiff was able to effectively grasp tools such as a hammer and to manipulate small objects. R. 468-71.

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence because (a) the ALJ "solely utilized" Dr. Hall's report in reaching that determination, and (b) this report was incomplete because Dr. Hall did not have Plaintiff's medical records or x-rays to review for the examination. *See* Pl.'s Reply Br. at 6-9. Plaintiff's first contention is contradicted by the written decision. The ALJ did cite to Dr. Hall's report as support for the RFC determination. *See* R. 23-24. The ALJ also, however, extensively cited and expressly relied upon numerous other items of evidence in the medical record, in both the RFC determination and other sections of the decision.

*See* R. 17-19, 22, 23-25. Plaintiff points to opinions of Drs. Grillo, Ellis, Ertl, Teague, and "the entire O[U] Hospital team" as purportedly absent from the ALJ's assessment. *See* Pl.'s Reply Br. at 9. To the contrary, extensive records from these and other physicians were included in the record before the ALJ and cited or discussed by the ALJ. *See* R. 17-18, 23-24, 314-16 (records of Joseph Grillo, MD; ALJ's discussion thereof); R. 18-19, 22, 23-24, 559, 568-70 (records of Jeri Ellis, MD; ALJ's discussion thereof); R. 17, 23-24, 101, 322-452, 452-63 (records of David Teague, MD, William Ertl, MD, and OU Medical Center; ALJ's discussion thereof).

As for Plaintiff's second contention, Dr. Hall did state in her assessment of Plaintiff that "[n]o records are available to me at this time." R. 467. Nowhere in the written report, however, did Dr. Hall express that additional records were necessary in order for her to conduct an examination of Plaintiff or to properly issue a range-of-motion evaluation and findings. Plaintiff argues that Dr. Hall improperly limited her examination due to the lack of records, but Plaintiff does not identify where or how Dr. Hall's report was incomplete or incorrect. *See* Pl.'s Reply Br. at 8. Plaintiff has not shown that the ALJ erred in relying upon Dr. Hall's report, together with other medical evidence, in forming the RFC determination. *Cf. Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (declining to "speculate on [claimant's] behalf" as to which medical opinions claimant believed the ALJ to have disregarded or ignored).

2. <u>Substantial Evidence</u>

To the extent Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence in the record, this argument must be rejected. The ALJ cited

8

various physicians' assessments and records, as well as Plaintiff's self-reporting of daily activities, in formulating the RFC. *See* R. 21-25. As noted by the ALJ, while the medical evidence did reflect that Plaintiff had suffered significant injuries in a 2007 motor vehicle accident, requiring an extended hospital stay, there was no evidence Plaintiff since then "has suffered any additional fractures and other traumatic injuries" or "developed significant anatomical abnormalities or other complications." R. 23 (citing R. 314-574).

Plaintiff's treating physician, Dr. Ellis, noted in her report of July 26, 2011, that Plaintiff had decreased range of motion in his lumbar spine and some chronic deformities to his spine and right hip. R. 568. However, Dr. Ellis found only minimal to mild degenerative changes to Plaintiff's spine and hip and that Plaintiff could ambulate with use of a cane. R. 568; *cf.* R. 254 (Plaintiff stating that he uses his cane or a shopping cart as an ambulatory aid only when "forced" to by his wife because these items "make[] [Plaintiff] look twice [his] age"). Dr. Ellis instructed Plaintiff to return to her clinic when necessary. R. 570. Further, Dr. Ellis imposed restrictions of no prolonged walking/standing, no repetitive bending/stooping, no squatting/kneeling, and no lifting over 15 pounds. R. 568, 570. These restrictions align almost exactly with those of the RFC determination: that Plaintiff can "stand and/or walk about 2 hours in an 8 hour work day"; that Plaintiff can "occasionally" stoop or bend; that Plaintiff can "never crouch, kneel, and crawl"; and that Plaintiff can lift "10 pounds frequently and 20 pounds occasionally." R. 21. In addition, the RFC's limitations that Plaintiff carry out only "some" complex tasks and have only "occasional contact and interactions with the general public" are entirely consistent with the mental RFC assessment completed by

9

consulting physician Sally Varghese, MD, on February 4, 2011. *See* R. 494-95 (finding Plaintiff moderately limited in the ability to understand, remember, and carry out detailed instructions and the ability to interact appropriately with the general public but not significantly limited in any other of 17 categories of mental activities).

The ALJ's conclusion that Plaintiff could perform a limited range of skilled, light work and a very wide range of semi-skilled, sedentary work—subject to detailed exertional and nonexertional limitations—therefore is consistent with the medical evidence, is not "overwhelmed by other evidence in the record," and does not "constitute[] a mere conclusion." *See Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (internal quotation marks omitted). Because the ALJ's RFC finding is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," reversal is not warranted on this basis. *See id.*

   B. *The Step-Three Determination*

Plaintiff argues that the ALJ's step-three determination is not supported by substantial evidence or rendered under proper legal standards. Specifically, Plaintiff contends that the ALJ did not correctly determine whether his condition meets or functionally equals a listing because the ALJ "relied on incomplete consultative exams and form reviewers and did not consider all the medical evidence, signs and symptoms and xrays" as required by the relevant regulations. *See* Pl.'s Br. at 9-10.

As outlined above, the ALJ determined at step three that Plaintiff's condition did not meet or equal any of the presumptively disabling impairments of the Listings. R. 20-21; *see* 20 C.F.R. pt. 404, subpt. P. app. 1; 20 C.F.R. §§ 404.1520(d), 416.920(d). In this

10

portion of his decision, the ALJ noted that Plaintiff had not advanced any specific argument that his health impairment(s) met or equaled the criteria for an impairment in the Listings. R. 20. The ALJ nevertheless expressly considered the criteria of Listings 1.00 et seq. (Musculoskeletal System) and 12.00 et seq. (Neurological), particularly Listings 1.02 (major dysfunction of a joint(s)), 1.03 (reconstructive surgery or surgical arthrodesis of a major weight-bearing joint), 1.04 (disorders of the spine resulting in compromise of nerve root or spinal cord), 1.06 (fracture of the pelvis or other bones), and 12.04 (affective disorders). R. 20; *see* 20 C.F.R. pt. 404, subpt. P app. 1, §§ 1.02, 1.03, 1.04, 1.06, 12.04. The ALJ relied upon his RFC analysis of Plaintiff's physical impairments, as well as separate consideration of the evidence regarding the effects of Plaintiff's obesity and the severity of Plaintiff's mental impairments, in reaching his step-three determination. R. 20-21; *see* "Titles II and XVI: Evaluation of Obesity," SSR 02-1p, 2002 WL 34686281 (Sept. 12, 2002); 20 C.F.R. pt. 404, subpt. P app. 1, § 12.04.

Plaintiff's conclusory argument fails to offer any actual example of error or lack of support for the ALJ's step-three finding or rationale therefor. Nor does the undersigned observe any such error or evidentiary failure in this aspect of the decision. The ALJ's broad selection of potentially applicable Listings is supported by the specific musculoskeletal and depression problems for which Plaintiff sought both medical treatment and disability benefits. Plaintiff's objections to the ALJ's Listing finding— reliance on an incomplete examination and failure to consider the entire record—are entirely duplicative of his objections to the RFC determination and are unavailing, for the reasons provided above. *See supra* Part A.1; R. 17-20 (ALJ summarizing medical

evidence in the record), 20-21 (ALJ referencing his RFC determination in reaching his Listing finding). Plaintiff does not identify any "form reviewers" whose review was incomplete or improper. Plaintiff's claim of error at step three must be rejected.

*C. The Failure to Obtain a Vocational Expert*

Finally, Plaintiff argues that the ALJ erred in failing to obtain testimony from a vocational expert ("VE") at the hearing. Pl.'s Reply Br. at 10-11. At step five, the ALJ relied on the "Grids," rather than a VE, in concluding that Plaintiff was not disabled. R. 25-26 (citing 20 C.F.R. pt. 404, subpt. P app. 2). The Grids are tables that direct a step-five conclusion—either disabled or not disabled—based on the application of certain medical-vocational factors (e.g., age and education) to the standard exertional categories of sedentary, light, and medium work. *See* SSR 83-12, 1983 WL 31253 (Feb. 26, 1979); *Heckler v. Campbell*, 461 U.S. 458, 461-62 (1983); 20 C.F.R. pt. 404, subpt. P app. 2. If there is not a table rule that accurately describes a claimant's abilities and limitations, the Grids may not be used. *Campbell*, 461 U.S. at 462 n.5. Where the extent of erosion to the claimant's occupational base caused by his or her additional limitations is unclear, the Commissioner must obtain evidence from a vocational resource. *See* SSR 83-12, 1983 WL 31253, at *2.

Generally, the Grids may not be relied on if a claimant's impairments prevent him or her from performing the full range of one of the exertional categories of work. *Channel*, 747 F.2d at 579-80. If the ALJ determines that the claimant's particular nonexertional limitations would have very little effect on the occupational base for that exertional category, however, the step-five conclusion directed by the applicable table

12

rule may be adopted without additional evidence from a vocational resource such as the testimony of a VE. *See id.* at 580, 582-83 & n.6; SSR 83-14, 1983 WL 31254, at *3-4, *6. In other words, reliance on the Grids is not precluded by the "mere presence of a nonexertional impairment"; such reliance is precluded only if "the nonexertional impairments are significant enough to limit the range of jobs available in a given work category." *Mitchell v. Astrue*, 498 F. App'x 757, 759 (10th Cir. 2012) (internal quotation marks omitted); *Polson v. Astrue*, 508 F. App'x 705, 708 (10th Cir. 2013) (internal quotation marks omitted). In other words, "the grids may be used for claimants with nonexertional impairments whenever the claimant can perform a substantial majority of the work in the designated [RFC] category." *Mitchell*, 498 F. App'x at 759 (internal quotation marks omitted).

In the decision at issue, the ALJ found that because Plaintiff's additional limitations "have little or no effect on the occupational base of unskilled sedentary work," given Plaintiff's ability to "perform a very wide range of semi-skilled sedentary work," the determination could be made through reference to the Grids, specifically Rules 201.28 and 201.29.[4] R. 25-26. In attacking this finding, Plaintiff repeats his argument as to the ALJ's reliance upon Dr. Hall's allegedly incomplete examination and also describes the challenges he has faced in trying to maintain employment in light of his injuries, pain, and prescription medication side effects. Pl.'s Reply Br. at 10-11.

---

[4] Rules 201.28 and 201.29 direct a finding of "not disabled" for (a) an individual age 18-44, (b) with a high school education or higher, and (c) whose previous work experience is skilled or semiskilled. *See* 20 C.F.R. pt. 404, subpt. P app. 2. The record supports, and Plaintiff does not disagree, that each of these criteria is applicable here.

Plaintiff's objections connected to Dr. Hall's examination and report are meritless, as outlined above in Part A.1. Further, even to the extent Plaintiff's personal accounting of his inability to work is supported by the record and testimony evidence, none of these representations in the Reply Brief demonstrate error or undermine the evidence supporting the ALJ's step-five analysis. More to the point, Plaintiff's assertions reiterate the complaints of pain and frustration that Plaintiff reported to his health care providers and that are reflected in the medical evidence, which was in turn considered by the ALJ. *See, e.g.*, R. 460, 462, 465, 475-76, 568. Such assertions, standing alone, do not support a conclusion that Plaintiff's particular nonexertional limitations "are significant enough to limit the range of jobs available" in the unskilled sedentary work category and thereby preclude reliance on the Grids to direct a finding of nondisability. *See* Pl.'s Reply Br. at 10-11; *Polson*, 508 F. App'x at 708 (internal quotation marks omitted); *Mitchell*, 498 F. App'x at 759; 20 C.F.R. §§ 404.1567(a), .1568(a); *id.* §§ 416.967(a), .968(a); R. 17-19, 22-25.

Plaintiff additionally cites *Jones v. Apfel* to support his argument that the ALJ was required to obtain the testimony of a VE at the hearing. *See* Pl.'s Reply Br. at 10; *Jones*, 190 F.3d 1224 (11th Cir. 1999), *superseded on other grounds by* SSR 00-04p, 2000 WL 1898704 (Dec. 4, 2000). Even if it were binding on this Court, *Jones* does not so hold. Rather, *Jones* simply recites the SSA's guidance (as did the ALJ in the decision) in noting that "[w]hen the claimant cannot perform a full range of work at a given level of exertion or the claimant has non-exertional impairments that significantly limit basic work skills, exclusive reliance on the grids is inappropriate" and the "preferred method"

is to obtain VE testimony.  *Compare Jones*, 190 F.3d at 1229, *with* R. 25.  *See generally* SSR 83-12, 1983 WL 31253.  In contrast to the instant case, the ALJ in *Jones* found that the claimant was not capable of performing a full range of sedentary work and so obtained VE testimony.  *See Jones*, 190 F.3d at 1229.  Plaintiff's citation to *Jones* does not show that the ALJ here erred in specifically finding that Plaintiff's additional limitations "have little or no effect on the occupational base of unskilled sedentary work," given Plaintiff's ability to "perform a very wide range of semi-skilled sedentary work," such that the step-five determination could be made through reference to the Grids rather than requiring a VE to testify.  R. 25-26.  Nor does the undersigned's review of *Jones* uncover support for an argument that the ALJ's finding in this respect is not supported by substantial evidence.  Reversal is not warranted on this basis.

## RECOMMENDATION

Having reviewed the record, the transcripts, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  Any such objections must be filed with the Clerk of this Court by February 13, 2015.  The parties further are advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein.  *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 30th day of January, 2015.

*Charles B. Goodwin*
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE